(Slip Opinion)          OCTOBER TERM, 2006          1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is
being done in connection with this case, at the time the opinion is issued.
The syllabus constitutes no part of the opinion of the Court but has been
prepared by the Reporter of Decisions for the convenience of the reader.
See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## LAWRENCE *v.* FLORIDA

CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR
THE ELEVENTH CIRCUIT

No. 05–8820.   Argued October 31, 2006—Decided February 20, 2007

The 1-year statute of limitations for seeking federal habeas relief from
a state-court judgment is tolled while an "application for State post-
conviction or other collateral review" "is pending."   28 U. S. C.
§2244(d)(2).   Petitioner Lawrence filed a state postconviction relief
application 364 days after his conviction became final.   The trial
court denied relief, the State Supreme Court affirmed, and this Court
denied certiorari.   While the certiorari petition was pending, Law-
rence filed the present federal habeas application.   Then-applicable
Eleventh Circuit precedent foreclosed any argument that the limita-
tions period was tolled by the pendency of the certiorari petition.
Thus, the District Court dismissed Lawrence's application as un-
timely because he waited 113 days after the State Supreme Court's
mandate—well beyond the one day that remained in the limitations
period—to file the application.   The Eleventh Circuit affirmed.

*Held:*

   1. Section 2244(d)(2) does not toll the 1-year limitations period dur-
ing the pendency of a certiorari petition in this Court.   Pp. 3–8.

   (a) Read naturally, the statute's text means that the statute of
limitations is tolled only while state courts review the application.   A
state postconviction application "remains pending" "until the applica-
tion has achieved final resolution through the State's postconviction
procedures."   *Carey* v. *Saffold*, 536 U. S. 214, 220.   This Court is not a
part of those "procedures," which end when the state courts have fi-
nally resolved the application.   The application is therefore not
"pending" after the state court's postconviction review is complete.   If
it were, it is difficult to understand how a state prisoner could ex-
haust state postconviction remedies without filing a certiorari peti-
tion.   Yet state prisoners need not petition for certiorari to exhaust

state remedies.  *Fay* v. *Noia*, 372 U. S. 391, 435–438.  Pp. 3–5.

    (b) Lawrence argues that §2244(d)(2) should be construed to have
the same meaning as §2244(d)(1)(A), which refers to "the date on
which the judgment became final by *the conclusion of direct review* or
the expiration of the time for seeking such review."  (Emphasis
added.)  While "direct review" has long included review by this Court,
*Clay* v. *United States*, 537 U. S. 522, 527–528, §2244(d)(2) refers ex-
clusively to "State post-conviction or other collateral review," lan-
guage not easily interpreted to include participation by a federal
court.  And although the "time for seeking" direct review includes the
period for filing a certiorari petition, §2244(d)(2) makes no reference
to the "time for seeking" review of a state postconviction court's
judgment.  Instead, it seeks to know when a state review application
is pending.  A more analogous statutory provision, §2263(b)(2), con-
tains a limitations period that is tolled "from the date on which the
first petition for post-conviction review or other collateral relief is
filed until the final State court disposition of such petition."  Al-
though this differs from §2244(d)(2)'s language, the language used in
both sections clearly provides that tolling hinges on the pendency of
state review.  This interpretation of §2244(d)(2), results in few practi-
cal problems.  Because this Court rarely grants review of state post-
conviction proceedings, it is unlikely that a federal district court
would duplicate this Court's work or analysis.  In any event, a dis-
trict court concerned about duplication can stay a habeas application
until this Court acts.  Even in the extremely rare case in which a
state court grants relief and the State prevails on certiorari, a pris-
oner whose subsequent federal habeas petition may be entitled to eq-
uitable tolling in light of arguably extraordinary circumstances and
the prisoner's diligence.  See *Pace* v. *DiGuglielmo*, 544 U. S. 408, 418,
and n. 8.  In contrast to these hypothetical problems, allowing the
statute of limitations to be tolled by certiorari petitions would provide
incentives for state prisoners to file such petitions as a delay tactic,
regardless of the merit of their claims.  Pp. 5–8.

    2. Assuming, without deciding, that §2244(d)(2) allows for equita-
ble tolling, Lawrence falls far short of showing "extraordinary cir-
cumstances," *Pace, supra,* at 418, necessary to support equitable toll-
ing of his otherwise untimely claims.  Pp. 8–9.

421 F. 3d 1221, affirmed.

THOMAS, J., delivered the opinion of the Court, in which ROBERTS,
C. J., and SCALIA, KENNEDY, and ALITO, JJ., joined.  GINSBURG, J., filed a
dissenting opinion, in which STEVENS, SOUTER, and BREYER, JJ., joined.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

———

No. 05–8820

———

## GARY LAWRENCE, PETITIONER *v.* FLORIDA

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

[February 20, 2007]

JUSTICE THOMAS delivered the opinion of the Court.

Congress established a 1-year statute of limitations for seeking federal habeas corpus relief from a state-court judgment, 28 U. S. C. §2244(d), and further provided that the limitations period is tolled while an "application for State post-conviction or other collateral review" "is pending," §2244(d)(2). We must decide whether a state application is still "pending" when the state courts have entered a final judgment on the matter but a petition for certiorari has been filed in this Court. We hold that it is not.

I

Petitioner Gary Lawrence and his wife used a pipe and baseball bat to kill Michael Finken. A Florida jury convicted Lawrence of first-degree murder, conspiracy to commit murder, auto theft, and petty theft. The trial court sentenced Lawrence to death. The Florida Supreme Court affirmed Lawrence's conviction and sentence on appeal, and this Court denied certiorari on January 20, 1998. 522 U. S. 1080.

On January 19, 1999, 364 days later, Lawrence filed an application for state postconviction relief in a Florida trial

court.[1]  The court denied relief, and the Florida Supreme
Court affirmed, issuing its mandate on November 18,
2002.  See *Lawrence* v. *State*, 831 So. 2d 121 (per curiam).
Lawrence sought review of the denial of state postconvic-
tion relief in this Court.  We denied certiorari on March
24, 2003.  538 U. S. 926.

While Lawrence's petition for certiorari was pending, he
filed the present federal habeas application.  The Federal
District Court dismissed it as untimely under §2244(d)'s 1-
year limitations period.  All but one day of the limitations
period had lapsed during the 364 days between the time
Lawrence's conviction became final and when he filed for
state postconviction relief.  The limitations period was
then tolled while the Florida courts entertained his state
application.  After the Florida Supreme Court issued its
mandate, Lawrence waited another 113 days—well be-
yond the one day that remained in the limitations period—
to file his federal habeas application.  As a consequence,
his federal application could be considered timely only if
the limitations period continued to be tolled during this
Court's consideration of his petition for certiorari.  Then-
applicable Eleventh Circuit precedent foreclosed any
argument that §2244's statute of limitations was tolled by
the pendency of a petition for certiorari seeking review of a
state postconviction proceeding.  See *Coates* v. *Byrd*, 211
F. 3d 1225, 1227 (2000) *(per curiam)*.  Accordingly, the
District Court concluded that Lawrence had only one day

_____

[1] Lawrence contends that delays in Florida's program for appointing
postconviction counsel and other issues outside of his control caused
298 days to pass before Florida appointed an attorney who took an
active role in his postconviction case.  These facts have little relevance
to our analysis.  Lawrence did not seek certiorari on the question
whether these facts entitle him to equitable tolling.  Indeed, Lawrence
was able to file his state postconviction petition on time in spite of these
delays.  And before this Court, he argues that his attorney mistakenly
missed the federal habeas deadline, not that he lacked adequate time to
file a federal habeas application.

to file a federal habeas application after the Florida Supreme Court issued its mandate. The Eleventh Circuit affirmed. 421 F. 3d 1221 (2005). We granted certiorari, 547 U. S. \_\_\_ (2006), and now affirm.

## II

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 110 Stat. 1214, sets a one-year statute of limitations for seeking federal habeas corpus relief from a state-court judgment. 28 U. S. C. §2244(d)(1). This limitations period is tolled while a state prisoner seeks postconviction relief in state court:

> "The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." §2244(d)(2).

Based on this provision, the parties agree that AEDPA's limitations period was tolled from the filing of Lawrence's petition for state postconviction relief until the Florida Supreme Court issued its mandate affirming the denial of that petition. At issue here is whether the limitations period was also tolled during the pendency of Lawrence's petition for certiorari to this Court seeking review of the denial of state postconviction relief. If it was tolled, Lawrence's federal habeas application was timely. So we must decide whether, according to §2244(d)(2), an "application for State post-conviction or other collateral review" "is pending" while this Court considers a certiorari petition.[2]

Read naturally, the text of the statute must mean that

---

[2] We have previously held that the word "State" modifies both the terms "post-conviction" and "other collateral review." *Duncan* v. *Walker*, 533 U. S. 167, 172–174 (2001). The question, therefore, is whether "an application for *State* post-conviction or other *[State]* collateral review . . . is pending." §2244(d)(2) (emphasis added).

the statute of limitations is tolled only while state courts review the application. As we stated in *Carey* v. *Saffold*, 536 U. S. 214, 220 (2002) (internal quotation marks omitted), a state postconviction application "remains pending" "until the application has achieved final resolution through the State's postconviction procedures." This Court is not a part of a "State's post-conviction procedures." State review ends when the state courts have finally resolved an application for state postconviction relief. After the State's highest court has issued its mandate or denied review, no other state avenues for relief remain open. And an application for state postconviction review no longer exists. All that remains is a separate certiorari petition pending before a *federal* court. The application for state postconviction review is therefore not "pending" after the state court's postconviction review is complete, and §2244(d)(2) does not toll the 1-year limitations period during the pendency of a petition for certiorari.

If an application for state postconviction review were "pending" during the pendency of a certiorari petition in this Court, it is difficult to understand how a state prisoner could exhaust state postconviction remedies without filing a petition for certiorari. Indeed, AEDPA's exhaustion provision and tolling provision work together:

> "The tolling provision of §2244(d)(2) balances the interests served by the exhaustion requirement and the limitation period. . . . Section 2244(d)(1)'s limitation period and §2244(d)(2)'s tolling provision, together with §2254(b)'s exhaustion requirement, encourage litigants *first* to exhaust all state remedies and *then* to file their federal habeas petitions *as soon as possible*." *Duncan* v. *Walker*, 533 U. S. 167, 179, 181 (2001) (final emphasis added).

Yet we have said that state prisoners need not petition for

certiorari to exhaust state remedies. *Fay* v. *Noia*, 372 U. S. 391, 435–438 (1963); *County Court of Ulster Cty.* v. *Allen*, 442 U. S. 140, 149–150, n. 7 (1979). State remedies are exhausted at the end of state-court review. *Fay, supra,* at 435–438; *Allen, supra*, at 149–150, n. 7.

Lawrence argues that §2244(d)(2) should be construed to have the same meaning as §2244(d)(1)(A), the trigger provision that determines when AEDPA's statute of limitations begins to run. But §2244(d)(1)(A) uses much different language from §2244(d)(2), referring to "the date on which the judgment became final by *the conclusion of direct review* or the expiration of the time for seeking such review." §2244(d)(1)(A) (emphasis added). When interpreting similar language in §2255, we explained that "direct review" has long included review by this Court. *Clay* v. *United States*, 537 U. S. 522, 527–528 (2003). Indeed, we noted that "[t]he Courts of Appeals have uniformly interpreted 'direct review' in §2244(d)(1)(A) to encompass review of a state conviction by this Court." *Id.*, at 528, n. 3 (collecting cases). By contrast, §2244(d)(2) refers exclusively to "*State* post-conviction or other collateral review," language not easily interpreted to include participation by a federal court.

Furthermore, §2244(d)(1)(A) refers to the "time for seeking" direct review, which includes review by this Court under *Clay*. By parity of reasoning, the "time for seeking" review of a state postconviction judgment arguably would include the period for filing a certiorari petition before this Court. However, §2244(d)(2) makes no reference to the "time for seeking" review of a state postconviction court's judgment. Instead, it seeks to know when an application for "State . . . review" is pending. The linguistic difference is not insignificant: When the state courts have issued a final judgment on a state application, it is no longer pending even if a prisoner has additional time for seeking review of that judgment through a petition for

certiorari.

A more analogous statutory provision is §2263(b)(2), which is part of AEDPA's "opt-in" provisions for States that comply with specific requirements relating to the provision of postconviction counsel. Under §2263, the limitations period is tolled "from the date on which the first petition for post-conviction review or other collateral relief is filed until the final State court disposition of such petition." §2263(b)(2). Lawrence concedes that under this language there would be no tolling for certiorari petitions seeking review of state postconviction applications. And although he correctly notes that the language in §2263 differs from the language of §2244(d)(2), it is clear that the language used in both sections provides that tolling hinges on the pendency of state review. See §2263(b)(2) ("until the final State court disposition of such petition"); §2244(d)(2) ("a properly filed application for State post-conviction or other collateral review . . . is pending"). Given Congress' clear intent in §2263 to provide tolling for certiorari petitions on direct review but not for certiorari petitions following state postconviction review, it is not surprising that Congress would make the same distinction in §2244.

Lawrence also argues that our interpretation would result in awkward situations in which state prisoners have to file federal habeas applications while they have certiorari petitions from state postconviction proceedings pending before this Court. But these situations will also arise under the express terms of §2263, and Lawrence admits that Congress intended that provision to preclude tolling for certiorari petitions. Brief for Petitioner 22. Because Congress was not concerned by this potential for awkwardness in §2263, there is no reason for us to construe the statute to avoid it in §2244(d)(2).

Contrary to Lawrence's suggestion, our interpretation of §2244(d)(2) results in few practical problems. As JUSTICE

STEVENS has noted, "this Court rarely grants review at this stage of the litigation even when the application for state collateral relief is supported by arguably meritorious federal constitutional claims," choosing instead to wait for "federal habeas proceedings." *Kyles* v. *Whitley*, 498 U. S. 931, 932 (1990) (opinion concurring in denial of stay of execution). Thus, the likelihood that the District Court will duplicate work or analysis that might be done by this Court if we granted certiorari to review the state postconviction proceeding is quite small. And in any event, a district court concerned about duplicative work can stay the habeas application until this Court resolves the case or, more likely, denies the petition for certiorari.

Lawrence argues that even greater anomalies result from our interpretation when the state court grants relief to a prisoner and the state petitions for certiorari. In that hypothetical, Lawrence maintains that the prisoner would arguably lack standing to file a federal habeas application immediately after the state court's judgment (because the state court granted him relief) but would later be time barred from filing a federal habeas application if we granted certiorari and the State prevailed. Again, this particular procedural posture is extremely rare. Even so, equitable tolling may be available, in light of the arguably extraordinary circumstances and the prisoner's diligence. See *Pace* v. *DiGuglielmo*, 544 U. S. 408, 418, and n. 8 (2005).[3] We cannot base our interpretation of the statute on an exceedingly rare inequity that Congress almost certainly was not contemplating and that may well be cured by equitable tolling.

In contrast to the hypothetical problems identified by Lawrence, allowing the statute of limitations to be tolled by certiorari petitions would provide incentives for state prisoners to file certiorari petitions as a delay tactic. By

---

[3] As discussed below, we assume, as the parties do, the availability of equitable tolling under §2244.

filing a petition for certiorari, the prisoner would push back §2254's deadline while we resolved the petition for certiorari. This tolling rule would provide an incentive for prisoners to file certiorari petitions—regardless of the merit of the claims asserted—so that they receive additional time to file their habeas applications.

## III

Lawrence also argues that equitable tolling applies to his otherwise untimely claims. We have not decided whether §2244(d) allows for equitable tolling. See *ibid.* Because the parties agree that equitable tolling is available, we assume without deciding that it is. To be entitled to equitable tolling, Lawrence must show "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way" and prevented timely filing. *Id.*, at 418.

Lawrence makes several arguments in support of his contention that equitable tolling applies to his case. First, he argues that legal confusion about whether AEDPA's limitations period is tolled by certiorari petitions justifies equitable tolling. But at the time the limitations period expired in Lawrence's case, the Eleventh Circuit and every other Circuit to address the issue agreed that the limitations period was not tolled by certiorari petitions. See, *e.g., Coates*, 211 F. 3d, at 1227. The settled state of the law at the relevant time belies any claim to legal confusion.

Second, Lawrence argues that his counsel's mistake in miscalculating the limitations period entitles him to equitable tolling. If credited, this argument would essentially equitably toll limitations periods for every person whose attorney missed a deadline. Attorney miscalculation is simply not sufficient to warrant equitable tolling, particularly in the postconviction context where prisoners have no constitutional right to counsel. *E.g., Coleman* v.

*Thompson*, 501 U. S. 722, 756–757 (1991).

Third, Lawrence argues that his case presents special circumstances because the state courts appointed and supervised his counsel. But a State's effort to assist prisoners in postconviction proceedings does not make the State accountable for a prisoner's delay. Lawrence has not alleged that the State prevented him from hiring his own attorney or from representing himself. It would be perverse indeed if providing prisoners with postconviction counsel deprived States of the benefit of the AEDPA statute of limitations. See, *e.g., Duncan*, 533 U. S., at 179 ("The 1-year limitation period of §2244(d)(1) quite plainly serves the well-recognized interest in the finality of state court judgments").

Fourth, Lawrence argues that his mental incapacity justifies his reliance upon counsel and entitles him to equitable tolling. Even assuming this argument could be legally credited, Lawrence has made no factual showing of mental incapacity. In sum, Lawrence has fallen far short of showing "extraordinary circumstances" necessary to support equitable tolling.

## IV

The Court of Appeals correctly determined that the filing of a petition for certiorari before this Court does not toll the statute of limitations under §2244(d)(2). It also correctly declined to equitably toll the limitations period in the factual circumstances of Lawrence's case. For these reasons, the judgment of the Court of Appeals is affirmed.

*It is so ordered.*

# SUPREME COURT OF THE UNITED STATES

_____

No. 05–8820

_____

## GARY LAWRENCE, PETITIONER *v.* FLORIDA

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE ELEVENTH CIRCUIT

[February 20, 2007]

JUSTICE GINSBURG with whom JUSTICE STEVENS, JUSTICE SOUTER, and JUSTICE BREYER join, dissenting.

The Court today concludes that an application for state postconviction review "no longer exists"—and therefore is not "pending"—once it has been decided by a State's highest court. *Ante*, at 4. What remains, the majority reasons, is a "separate" certiorari proceeding pending before this Court. *Ibid.* But petitions for certiorari do not exist in a vacuum; they arise from actions instituted in lower courts. When we are asked to review a state court's denial of habeas relief, we consider an application for that relief— not an application for federal habeas relief. Until we have disposed of the petition for certiorari, the application remains live as one for state postconviction relief; it is not transformed into a federal application simply because the state-court applicant petitions for this Court's review.[1]

I would therefore hold that 28 U. S. C. §2244(d)'s statute of limitations is tolled during the pendency of a petition

_____

[1] It is unclear just what the majority thinks we are considering when we address a state habeas petition on certiorari. We are certainly not deciding a petition for federal habeas relief. See 28 U. S. C. §2254 (authorizing applications by persons in state custody for federal habeas review). And though we can entertain original habeas petitions, see *Felker* v. *Turpin*, 518 U. S. 651, 660 (1996), a petition for certiorari from a state-court judgment does not fall within that category.

for certiorari.[2]   Congress instructed that the one-year limitation period for filing a habeas petition in the appropriate federal district court does not include "[t]he time during which a properly filed application for State postconviction or other collateral review . . . is pending." §2244(d)(2).   That provision can and should be read to continue statutory tolling until this Court has either decided or denied a petition for certiorari addressed to the state court's disposition of an application for postconviction relief.   See *Carey* v. *Saffold*, 536 U. S. 214, 219–220 (2002) ("pending" means "in continuance" or "not yet decided" (internal quotation marks omitted)).   The majority's contrary reading of §2244(d)(2) cuts short the tolling period before this Court has had an opportunity to consider an application for state postconviction relief.   That reading, I conclude, is neither a necessary nor a proper interpretation of the statute.

I

Two other provisions in the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 110 Stat. 1217, 1223, §§2244(d)(1) and 2263(b)(2)—bear on the proper interpretation of §2244(d)(2).   The first of these, §2244(d)(1)(A), tells us when AEDPA's statute of limitations begins to run; it states that the trigger is the "the date on which the judgment [of conviction] became final by the conclusion of direct review or the expiration of the time for seeking such review."   Congress thus explicitly ordered that the clock starts, following a state conviction, when the time to file a petition for certiorari expires or, if a petition is filed, when

_____

[2] I would not reach in this proceeding cases in which a petitioner does not seek certiorari review of the state court's judgment—*i.e.*, cases presenting the question whether tolling ends with the decision of the State's highest court or with the expiration of the time to file a petition for certiorari.   That question is not presented here, for Lawrence timely sought this Court's review of the denial of state postconviction relief.

it is decided or denied. See *Clay* v. *United States*, 537 U. S. 522, 527–529, and n. 3 (2003).

According to the majority, §2244(d)(2) cannot be interpreted similarly to encompass this Court's review because the text of that provision "refers exclusively to '*State* post-conviction or other collateral review.'" *Ante*, at 5 (emphasis in original). In fact, §2244(d)(2) refers to an "*application* for State post-conviction or other collateral review." (Emphasis added.) And it tolls the limitation period while the application is "pending," not while it is "pending *in State court*." See §2244(d)(2). Just as a judgment of conviction is not "final" until we have declined review or decided the case on the merits, see *Clay*, 537 U. S., at 527–530 (interpreting §2255), so an application for state habeas relief is sensibly understood to remain "pending" until we have disposed of the case. It is a fundamental characteristic of our federal system that this Court has appellate jurisdiction over state-court decisions implicating federal law or the Constitution. Until we have exercised that jurisdiction or declined to do so the case is not finally decided. See *supra*, at 1, and n. 1.[3]

In support of its opposing view, the majority emphasizes that §2244(d)(2) does not include the words "time for seeking . . . review," words included in §2244(d)(1)(A). This difference in phrasing, the majority reasons, indicates that Congress intended to cut off tolling as soon as the highest state court renders its judgment, well before a petition for review is filed in this Court.[4] But the wording

—————

[3]The majority inappropriately relies on *Carey* v. *Saffold*, 536 U. S. 214, 220 (2002), for the proposition that a state postconviction application remains pending only until the State's postconviction procedures are complete. *Ante*, at 4. Though *Carey* affirmed that tolling continues throughout the State's own postconviction procedures, it did not hold that (or even consider whether) the time for seeking certiorari from this Court was excluded from the tolling period.

[4]Notably, in *Clay* v. *United States*, 537 U. S. 522, 527–530 (2003), we

of §2244(d)(2), I am persuaded, is more appropriately contrasted with §2263(b)(2), which prescribes a parallel tolling rule for "opt-in" capital cases. Section 2263(b)(2), unlike the provision at issue here, leaves no doubt that Congress intended to exclude from the tolling period the time for filing a petition for certiorari. It provides that the statute of limitations tolls "from the date on which the first petition for post-conviction review or other collateral relief is filed *until the final State court disposition of such petition.*" (Emphasis added.) Section 2263(b)(2) thus demonstrates that when Congress wanted to cut off tolling immediately upon the final state court decision—*i.e.*, to exclude this Court's review from the tolling period—it simply said so.

One can understand why Congress might have chosen an uncommon rule for the special capital cases covered by §§2261–2263, a separate chapter of the statute. By terminating tolling upon final state-court disposition, rather than extending the period during the pendency of a certiorari petition, Congress eliminated one source of delay in implementing the death penalty. But Congress provided that the shortened tolling period would apply only to petitions brought by prisoners in States that have established a mechanism for providing counsel in postconviction proceedings. See §2261. An attorney, of course, is better equipped than a *pro se* petitioner to clear procedural hurdles, including shortened timelines.[5] Given the excep-

———————

rejected the contention that the absence of the phrase "time for seeking . . . review" from another provision changed the meaning of "final." Section 2255, ¶6(1), refers simply to "the date on which the judgment of conviction becomes final" and not to "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." Nevertheless, we held that a judgment of conviction becomes final when the time expires for filing a petition for certiorari. *Id.,* at 525, 528.

[5] Matching §2263(b)(2)'s abbreviated tolling period, §2263(a) provides for a shorter statute of limitations. Compare §2244(d)(1) ("A 1-year

tional character of the opt-in category, §2244(d)(2) is more appropriately aligned with §2244(d)(1)(A), the provision immediately preceding it, than with §2263(b)(2).

The majority maintains that if an application for state postconviction review were considered to be "pending" while a certiorari petition remained before this Court, then a state prisoner could not exhaust state postconviction remedies without filing a petition for certiorari. *Ante*, at 4–5. But exhaustion and tolling serve discrete functions and need not be synchronized. The former is a prerequisite to filing for habeas relief in federal court. Exhaustion promotes principles of comity and federalism by giving state courts the first opportunity to adjudicate claims of state prisoners; that doctrine, however, does not necessitate this Court's review of the state court's determination. See *O'Sullivan* v. *Boerckel*, 526 U. S. 838, 844 (1999) ("Comity . . . dictates that when a prisoner alleges that his continued confinement for a state court conviction violates federal law, the state courts should have the first opportunity to review this claim and provide any necessary relief."). Tolling, in contrast, concerns the time within which a procedural move must be made, not the issues that must be raised before a particular tribunal. And while one purpose of tolling is to allow adequate time for exhaustion, that is not the sole objective. Tolling in the context here involved also protects a litigant's ability to pursue his or her federal claims in a federal forum and avoids simultaneous litigation in more than one court— objectives undercut by today's decision. See *infra*, at 6–8.

*Duncan* v. *Walker*, 533 U. S. 167 (2001), does not suggest a different result. Cf. *ante*, at 4. In *Duncan*, we held that a *federal* habeas petition does not toll §2244(d)(1)'s

---

period of limitation shall apply to an application for a writ of habeas corpus . . . .") with §2263(a) (establishing a 180-day period of limitation).

limitation period because "an application for federal ha-
beas corpus review is not an application for State post-
conviction or other collateral review within the meaning of
28 U. S. C. §2244(d)(2)." 533 U. S., at 181 (internal quota-
tion marks omitted). But, unlike a federal habeas peti-
tion, an application for *state* habeas review undoubtedly is
"an application for State post-conviction review." This is
so whether the application is under review in a state
appellate court or is the subject of a petition seeking cer-
tiorari from this Court.

## II

Not only is the majority's reading of §2244(d)(2) unwar-
ranted, it will also spark the simultaneous filing of two
pleadings seeking essentially the same relief. A petitioner
denied relief by a State's highest court will now have to
file, contemporaneously, a petition for certiorari in this
Court and a habeas petition in federal district court. Only
by expeditiously filing for federal habeas relief will a
prisoner ensure that the limitation period does not run
before we have disposed of his or her petition for certio-
rari. Protective petitions will be essential, too, when we
grant review of a state court's ruling on a state habeas
petition, for many months can elapse between the date we
agree to hear a case and the date we issue an opinion.[6]
Consequently, the same claims will be pending in two
courts at once, and the duplication will occasion adminis-
trative problems; for example, no decision, law, or rule
tells us in which court the record in the case should be
lodged. See this Court's Rule 12, ¶7 ("The clerk of the
court having possession of the record shall keep it until
notified by the Clerk of this Court to certify and transmit

––––––––

[6] See, *e.g.*, *Sanchez-Llamas* v. *Oregon*, 548 U. S. ___ (2006) (certiorari
petition filed on June 7, 2005, and decided 386 days later on June 28,
2006); *Deck* v. *Missouri*, 544 U. S. 622 (2005) (certiorari petition filed on
July 15, 2004, and decided 312 days later on May 23, 2005).

it."). There is no indication that Congress intended to burden the court system or litigants with such premature filings.[7]

The anticipatory filing in a federal district court will be all the more anomalous when a habeas petitioner prevails in state court and the State petitions for certiorari. Under the majority's decision, it appears, the petitioner will be obliged to file a protective petition in federal court even though he gained relief from the state tribunal. Lawrence questions whether the federal courts would even have jurisdiction over such a bizarre petition. See *ante*, at 7. While I incline to the view that a prisoner in such a position would have standing, Lawrence's concerns are at least plausible and raise the specter of a habeas petitioner prevailing in state court, yet losing the right to pursue constitutional claims in federal court altogether: By the time we have ruled on the State's petition, the statute of limitations likely would have run.

_____

[7]The majority regards the practical problems as inconsequential for we rarely grant certiorari in state habeas proceedings. *Ante*, at 6–7. For this proposition, the Court cites a pre-AEDPA case in which JUSTICE STEVENS noted that federal habeas proceedings were generally the more appropriate avenue for our consideration of federal constitutional claims. See *Kyles* v. *Whitley*, 498 U. S. 931, 932 (1990) (opinion concurring in denial of stay of execution). Since AEDPA, however, our consideration of state habeas petitions has become more pressing. Under AEDPA's standard of review, a petitioner who has suffered a violation of a constitutional right will nonetheless fail on federal habeas unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by [this] Court," §2254(d)(1), or "was based on an unreasonable determination of the facts," §2254(d)(2). Even if rare, the importance of our review of state habeas proceedings is evident. See, *e.g.*, *Deck*, 544 U. S., at 624 (granting review of state habeas petition and holding that the Constitution forbids the use of visible shackles during guilt and penalty phase unless justified by an essential state interest); *Roper* v. *Simmons*, 543 U. S. 551, 578 (2005) (granting review of state habeas petition and holding that execution of individuals under age of 18 is prohibited by the Eighth and Fourteenth Amendments).

Though recognizing this problem, the majority suggests that equitable tolling may provide a solution. But in the next breath, the majority hastens to clarify that the Court does *not* hold that equitable tolling is available under AEDPA. *Ante*, at 7–8, and n. 3.[8]

By contrast, no similar problems, practical or jurisdictional, would result from a determination that an application for state postconviction review remains "pending" while a petition for certiorari from the state court's decision is before this Court. Nor would such a determination create an untoward opportunity for abuse of the writ. The majority's suggestion that prisoners would have an incentive to petition for certiorari as a delay tactic has no basis in reality in the mine run of cases. Most prisoners want to be released from custody as soon as possible, not to prolong their incarceration. They are therefore interested in the expeditious resolution of their claims.[9]

As earlier indicated, see *supra*, at 6–7, under the majority's rule, a petitioner could achieve the equivalent of tolling by filing a protective petition in federal court and seeking a stay while a certiorari petition is pending. See *ante*, at 7; cf. *Rhines* v. *Weber*, 544 U. S. 269, 278–279 (2005) (a prisoner seeking state postconviction relief may file a protective petition in federal court and ask the court to stay and abey the federal proceedings until state remedies are exhausted). In that event, today's decision does nothing to promote the finality of state-court determinations or the expeditious resolution of claims. Rather, it imposes an unnecessary administrative burden on federal district judges who must determine whether to grant a requested stay, and it sets a trap for those *pro se* litigants

––––––––

[8] Satisfied that statutory tolling covers this case, I do not address petitioner's alternative argument for equitable tolling.

[9] Though capital petitioners may be aided by delay, they are a small minority of all petitioners. In this case, moreover, there is no indication that Lawrence was intentionally dilatory. See *ante*, at 2, n. 1.

GINSBURG, J., dissenting

unaware of the need to file duplicative petitions.

In sum, the majority's reading is neither compelled by the text of §2244(d)(2) nor practically sound. By cutting off tolling before this Court has had an opportunity to consider a pending petition for certiorari, the Court's holding will unnecessarily encumber the federal courts with anticipatory filings and deprive unwitting litigants of the opportunity to pursue their constitutional claims—all without furthering the purposes of AEDPA.

\*    \*    \*

For the reasons stated, I would hold that petitioner Lawrence qualifies for statutory tolling under §2244(d)(2), and would therefore reverse the Eleventh Circuit's judgment.